1

*District of Columbia Office:*

201 Maryland Avenue, N.E.
Washington, D.C. 20002
(202) 546-8890
Fax: (202) 337-3167



**ACLJ**
American Center
*for* Law & Justice

*Writer's Direct Contact Information:*

Direct: (202) 546-9163
Fax: (202) 546-8623

November 24, 2008

Terrence Ryan
General Counsel
Metropolitan Police Department of the District of Columbia
300 Indiana Ave., NW
Room 4115
Washington, DC 20001

    re:  Planned Chalk Art Protest on Pennsylvania Avenue in vicinity of the White House

Dear Sir:

    At the request of my clients, I am writing to advise the MPD of a planned demonstration on January 24, 2009. I represent the Reverend Patrick Mahoney and the Christian Defense Coalition. They, along with Generation Life and Survivors of the Abortion Holocaust ("Survivors") are the organizers of the planned demonstration. The details are provided below.

    By way of introduction, the American Center for Law and Justice ("ACLJ") in a nonprofit organization concerned with the rights of religious liberty, freedom of speech, and constitutional governance. Attorneys with the ACLJ have argued cases addressing First Amendment freedoms in all levels of state and federal courts, including both the Supreme Court of the United States and the Superior Court for the District of Columbia.[1]

    The demonstrators on whose behalf I write to you share a longstanding commitment to the pursuit of social justice for unborn children. That goal they pursue by nonviolent, public demonstration activity. They strongly sense that their duty – as Christians – is to speak the truth to the powerful. That commitment, as their prior cases indicate,[2] often evinces itself in public comment and criticism of government actions, and in actions by which these demonstrators identify themselves publicly with defenseless unborn children.

    January next, as always, the District will bear witness to the gathering of thousands of like-minded Americans. On January 22nd these thousands will publicly express sorrow and regret, by words and demonstration, over the judicial usurpation that is *Roe v. Wade*. Reverend Mahoney, and the other demonstrators about whose activities I write to you, plan to gather for a permitted demonstration on January 22, 2009, in Lafayette Park. Two days later, on Saturday, January 24, 2009, weather conditions permitting, they will conduct a second demonstration on the

Letter to Terrence Ryan, General Counsel
Page 2
Nov. 24, 2008

public promenade portion of Pennsylvania Avenue directly between the White House and Lafayette Park. It is to that planned demonstration that they seek to draw your attention and about which they seek to give the MPD advance notice.

Reverend Mahoney and the other demonstrators plan to create a variety of verbal and visual messages, by making chalk drawings on the paved surface of Pennsylvania Avenue. These messages will speak for the voiceless unborn children who are victimized by abortion, will speak the truth of the Gospel of Life to the newly inaugurated President and administration, and will call the Nation to turn from the despair and hopelessness of abortion to the hope and light of Christ. No other kind of demonstration activity is planned for that day by these individuals and groups, other than the chalk drawing activities. Of course, the event is weather dependent.

The art and messages will be created using sidewalk chalk. This is a washable, non-toxic and non-indelible material commonly used by children for drawing and playing games on sidewalks. Sidewalk chalk does not damage the asphalt and concrete surfaces on which it is typically used. Because of its softness and friability, it is the chalk itself that is damaged, essentially destroyed, by its use. And because of its nature, chalk produces a readily dissipating image: simple foot traffic, a brief rain, strong winds, all scrub the chalk markings from the surfaces on which they have been made.

Of course, the District of Columbia has a track record of both allowing the use of chalk as part of public expression[3] and of using chalk to communicate messages to the public.[4] Equally obvious, the subject matter – opposition to abortion and the movement to extend full civil rights to unborn children – is at the core of constitutional protection of speech under the First Amendment. And, the use of public streets and sidewalks for such activities is an expected feature of these traditional public forum properties. Most importantly, a review of D.C. statutes and regulations reveals no basis is law to prohibit the chalk art demonstration.

The Supreme Court employs "forum" analysis to resolve claims of access to public property for purposes of free speech. *Cf., e.g., Perry Education Association v. Perry Local Educators' Association*, 460 U.S. 37 (1983) (internal mail system of public school not a traditional or designated public forum); *United States v. Grace*, 461 U.S. 171 (1983) (public sidewalk surrounding U.S. Supreme Court is a traditional public forum); *Cornelius v. N.A.A.C.P. Legal Defense and Education Fund, Inc.*, 473 U.S. 788, 797 (1985) (Combined Federal Campaign is not a traditional or designated public forum). As exemplified in *Cornelius*, the analysis proceeds in three steps.

First, the activity threatened or affected by government action must be identified, and it must be determined whether it is speech protected under the First Amendment. *Id.* (Obviously, in cases not involving expression or expressive activities, the analysis concludes here.) Second, it is essential to "identify the nature of the forum, because the extent to which the Government may

limit access depends on whether the forum is public or nonpublic." *Id.* Third, where constitutionally protected speech is at stake, the government action must be analyzed according to the standards applicable to the relevant forum. *Id.*

When forum analysis is applied in the instant case, Reverend Mahoney's claims for injunctive and declaratory relief are demonstrably well-founded and justified.

As explained above, the chalk art demonstration will take place on the pedestrian promenade portion of Pennsylvania Avenue directly in front of the White House. The chalk art demonstration will express opinions and views, through words and images, related to the Peculiar Institution of legalized abortion.

It is an axiom of the Constitution that religious speech and discussion "are forms of speech protected by the Constitution." *Widmar v. Vincent*, 454 U.S. 263, 269 (1981); *Heffron v. ISKCON, Inc.*, 452 U.S. 640 (1981). The chalk art demonstration, motivated by the religious conscience of Reverend Mahoney, the Christian Defense Coalition, and the other participants, "speaking" to the consequences of legalized abortion in the United States, "far from being a First Amendment orphan, is as fully protected under the Free Speech Clause as secular private expression." *Capital Square Review and Advisory Board v. Pinette*, 132 L.Ed.2d 650, 660 (1995) (citing cases). Further, their use of sidewalk chalk art and message to draw public attention to what they perceive as the incoming President's support for legalized abortion are constitutionally protected, core political expression.

The Pennsylvania Avenue pedestrian promenade is a traditional public forum. It is open to public passage. It is part of the contiguous stretch of Pennsylvania Avenue from northwest to northeast Washington, DC. The promenade is used by individuals for sightseeing at the White House, and by those in the nearby vicinage for transport to local businesses and government offices.

Moreover, access to this pedestrian promenade is unrestricted. There are no gates nor guards. There are no requirements for identification cards or passes. The layout of the pedestrian promenade encourages the public to sightsee, to patronize nearby businesses and amenities, and to enjoy the majestic vistas nearby.

The Supreme Court has repeatedly held that "streets, sidewalks, and parks, are considered, without more, to be public forums [sic]." *Grace*, 461 U.S. at 177 (and cases cited). It is well settled that:

Letter to Terrence Ryan, General Counsel
Page 4
Nov. 24, 2008

> [w]herever the title of streets and parks may rest, they have immemorially been held in trust for the use of the public and, time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions. Such use of the streets and public places has, from ancient times, been a part of the privileges, immunities, rights, and liberties of citizens.

*Hague v. C.I.O.*, 307 U.S. 496, 515 (1939) (plurality opinion).

Thus, streets, sidewalks, and parks represent "quintessential public forums." *Perry Education Association v. Perry Local Educators' Association*, 460 U.S. 37, 45 (1983). On the range of properties open in varying degrees to expressive activities, the sidewalks adjacent to Madison and Jefferson Drives lie at the very "end of the spectrum." *Id.*

In traditional public fora, like the Pennsylvania Avenue pedestrian promenade, "the government's ability to permissibly restrict expressive conduct is very limited." *Grace*, 461 U.S. at 177 (quoting *Perry*, 460 U.S. at 45) (additional citations omitted). This conclusion results from the fact that "[o]ne who is rightfully on a street [or a sidewalk] open to the public 'carries with him there as elsewhere the constitutional right to express his views in an orderly fashion.'" *Members of City Council of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 810 (1984) (quoting *Jamison v. Texas*, 318 U.S. 413, 416 (1943)) (additional citation omitted).

In fact, "[r]egulation of speech activity on governmental property that has been traditionally open to the public for expressive activity, such as public streets and parks, is examined under strict scrutiny." *United States v. Kokinda*, 497 U.S. 720, 726 (1990). In *Capital Square Review and Advisory Board v. Pinette*, 132 L.Ed.2d 650, 660 (1995), the Court explained that in a traditional public forum property, "the right to limit protected expressive activity is sharply circumscribed: it may impose reasonable, content-neutral time, place and manner restrictions ... but it may regulate expressive *content* only if such a restriction is necessary, and narrowly drawn, to serve a compelling state interest."

This chalk demonstration may present new issues of first impression in the DC Superior and federal courts, should resort to court be made necessary by any developments in this matter. It appears that the only reported cases regarding chalking on streets and sidewalks – arising in the Ninth and Second Circuits – reach conflicting results on the ultimate question of a constitutional right to make such chalk drawings as a feature of free speech. Here in the District, a simpler case is presented because of the District's long-standing practice of allowing and encouraging such activities. Thus, were the District now suddenly to conclude that it would prohibit chalk drawing it would be (a) committing itself to a burdensome effort at micro management, since such a rule would also bar school children from drawing hopscotch grids and flowers and other children's art on neighborhood sidewalks and (b) violating the rights of these demonstrators to be treated

Letter to Terrence Ryan, General Counsel
Page 5
Nov. 24, 2008

equally with others whose chalking has been tolerated or actively encouraged by the City.

Between now and the date of the demonstration, please contact me if there are any questions regarding the planned chalk art demonstration, or issues that must be addressed. If the MPD concludes that it will not allow the chalk art demonstration, my clients request the earliest possible determination of that conclusion to allow judicial review in a timely fashion.

With warm regards,

*James Matthew Henderson, Sr.*
*Senior Counsel*

copies to:

Peter Nickles  Acting Attorney General for the District of Columbia

Acting General Counsel Gus P. Coldebella
Office of the General Counsel
Department of Homeland Security

Donald Personnette, Chief Counsel
Secret Service, Office of the Chief Counsel

DAVID LONGLY BERNHARDT
Solicitor, U.S. Department of the Interior


1.      *See, e.g., Reverend Patrick Mahoney v. District of Columbia*, Civil Action No. 89-3136-OG, 1990 U.S. Dist. LEXIS 69 (U.S. Dist. Ct., Jan. 8, 1990, prel. inj. issued) (enjoining enforcement of emergency statute which regulated certain picketing and 'patrolling' within 100 feet of abortion clinics); *Reverend Patrick Mahoney v. Bruce Babbitt*, 105 F.3d 1452 (D.C. Cir. 1997) (enjoining National Park Service from arresting persons holding signs critical of President Clinton while standing adjacent to Inaugural Parade route).

2.      *See* n.1 and cases cited.

3.      *See* http://161.253.158.31/gwencyclopedia/index.php/University_Traditions ("Arts Fest and Chalk-in This annual event, sponsored by The University Counseling Center, is held in April and is a celebration of student talent in the arts. Students dance, sing and perform while other

Letter to Terrence Ryan, General Counsel
Page 6
Nov. 24, 2008

students participate in activities such as mask and frame making, fun with Play-Doh and create your own tribal art. H Street is closed to traffic during the event so students can draw on the street and sidewalks with chalk-a great stress-reliever as exams approach!"). Images from the most recent, 2008, chalk-in at George Washington University, can be found at http://flickr.com/photos/sabine01/sets/72157604715642790/.

4. *See* http://dcracommunications.files.wordpress.com/2008/08/howard1.jpg (image of stenciled and chalked consumer protection message). *See also* http://thisshouldbeillegal.com/about ("The D.C. Department of Consumer & Regulatory Affairs wants students attending colleges and universities in the District of Columbia to know that your health and safety are important to us. At thisshouldbeillegal.com we want to provide a central location where you can request free services that can make your life safer if you live off-campus. We also want to make the information available where you are. We have created a Facebook group so you can get immediate online and mobile updates. We're also on Twitter so you can ask questions and post links from wherever you are. We have also partnered with D.C. Fire & Emergency Medical Services to provide almost all of the important information you need regarding your off-campus housing. No need to click around all day. If your landlord is legally licensed to rent, the property has been inspected. If they are not legally licensed, there may not have been an inspection and dangerous conditions could exists - even if you can't see them. So check your property online, watch the videos and learn how to prepare for an emergency. We hope you enjoy the options. And if there is something you need, do not hesitate to contact at anytime").